### HENRY UPHAM & others *vs.* ROBERT LEFAVOUR.

The rule as to the appropriation of payments to the earliest items of debt applies to running accounts, where the payment must be presumed to have been made without other reference than to the discharge of the account, so far as the items of payment will go, but does not apply to cases in which the party, who has the right to make an appropriation, actually makes it, nor to cases in which, in the absence of such appropriation, the law makes it, upon the relation of the parties, to do justice between them.

A creditor, who has several demands against the same debtor, may apply payments to a debt not secured, when not prohibited by other rules of appropriation.

A factor, who makes advances on goods consigned to him, may maintain an action, before the goods are sold, to recover the money advanced, unless there is an agreement to the contrary.

A factor made advances on goods, and, before he had received the proceeds of any sales thereof, brought an action against the principal, and attached his property, to secure the amount advanced, and afterwards made further advances on the same goods, according to the original consignment. *Held*, that the factor might apply the proceeds of the goods, as they were received, towards the discharge of the sums advanced after the action was commenced.

THIS was an action of assumpsit for money paid, commenced on the 1st of October 1844. The plaintiffs annexed to their writ an account, in which the defendant was charged with divers sums paid for him, between the 9th of May 1844, and the day of the date of the writ, amounting to $5470·55, and was credited with $2920, received of him on the 11th of May 1844, and $29·25, received of him on the 18th of July following; leaving a balance against him of $2521·26.

The defendant pleaded the general issue, and filed the following specification of defence: "That the said several supposed causes of action were fully paid and discharged, prior to the commencement of the said action: That prior to the time of said supposed causes of action, and prior to the transactions out of which the same originated, the defendant proposed to the plaintiffs that he would purchase sundry lots of wool, and consign the same to the plaintiffs for sale upon commission, and upon their guaranty, provided the plaintiffs would, from time to time, make to the defendant certain advances in cash, or by their notes and acceptances: That in pursuance of such agreement, and prior to

the commencement of the plaintiffs' action, sundry advances were made by the plaintiffs, which advances constitute the said supposed causes of action : That upon the making of such advances, wool was purchased by the defendant and consigned to the plaintiffs for sale, as aforesaid : That the plaintiffs sold the same prior to the commencement of their action ; and that the amount of sales made by the plaintiffs for cash and credit, which credit has since matured, exceeds the amount of the plaintiffs' supposed causes of action ; the said sales amounting to the sum of $15,177·64, which has been received by the plaintiffs in discharge and liquidation of the advances so made by the plaintiffs : And that some of the wool, so consigned by the defendant to the plaintiffs, now remains in their hands unsold."

The case was sent to an auditor, who made the following report :

" The plaintiffs, prior to the 1st of May 1844, were, and now are, commission merchants in Boston. The defendant applied to them to make him sundry advances in cash, and in their acceptances, to enable him to purchase sheep-skins, upon an agreement, that he would pull the wool and consign the same to the plaintiffs, as security for such advances, and for sale upon a guaranty commission. In pursuance of this arrangement, the defendant purchased a lot of skins at Albany, and Robert Appleton, one of the plaintiffs, went there to see in relation to the settlement, and, to enable the defendant to make payment, made and delivered to the defendant his own draft upon the plaintiffs, dated May 6th 1844, at sight, for $2408·51, which the plaintiffs, upon its presentation, paid. The defendant, on the same 6th of May, made his certain drafts upon the plaintiffs, as follows, to wit : One at sixty days from its date, for $7000 ; one at three months from its date, for $3000 ; one at four months, for $4000 ; and one at five months, for $3000 ; all which drafts were, on presentation, accepted by the plaintiffs, and by them paid at maturity.

" On the 15th of June 1844, the defendant, at Albany, made his draft upon the plaintiffs, at sight, for $2354·63, which on

presentation was paid by the plaintiffs. On the 11th of May 1844, the defendant paid the plaintiffs the sum of $2920, and they gave a receipt therefor, in these words : ' Boston, May 11th 1844. Received of Mr. Robert Lefavour twenty nine hundred and twenty dollars, on account of purchase of sheep skins in Albany ; ' which is the same $2920 credited in the account annexed to the plaintiffs' writ.

" Between the 9th day of May 1844, and the 1st of October, the plaintiffs had made to the defendant, upon this consignment, the several cash advances stated on the debit side of the account annexed to their writ, which includes the two drafts, as above drawn at sight, to wit, one for $2408·51, and one for $2354·63.

" Besides the cash advances made by the plaintiffs, as above stated, the plaintiffs, as a matter of accommodation to the defendant, and before any sales of wool had been made, accepted the drafts drawn on them by the defendant at Albany, as aforesaid, to the amount of $17,000, dated and payable as follows :

| Date. | Payee. | | Time. | Due. | Am't. |
|---|---|---|---|---|---|
| May 6 1844, | Sherman, Cashier | | 60 days, | July 8, | $7000 |
| " | Plumb, | " | 3 months, | Aug. 9, | 3000 |
| " | " | " | 4  " | Sept. 9, | 4000 |
| " | " | " | 5  " | Oct. 9, | 3000 |

which are part of the acceptances hereinbefore named. These acceptances were debited to the defendant, in his general account in the plaintiffs' ledger, on the 8th of May, as bills payable.

" At or about the several times when these drafts respectively became due, no sales of the wool having been made, and it being for the interest of the defendant not to have his wool sold at the then market rates, and he being unable to take up the said drafts, the plaintiffs made and delivered to the defendant their acceptances and notes of the following tenor ; to wit, three drafts made by the defendant, and accepted by the plaintiffs, all dated July 18th 1844: One at four months from its date for $2500 ; one at six months, for $2500 ; and one at six months, for $5000. And the plaintiffs,

also, on the 26th of August 1844, made their note to the defendant, at ninety days, for $3000, and on the 30th of August their note at $3000 ; which last acceptances and notes were procured by the defendant to be discounted, and the proceeds, less the discount, remitted to the plaintiffs, and the receipt thereof by the plaintiffs acknowledged.

" These last several transactions took place, in some instances before, and in some instances after, the respective first named drafts became due, but always with reference to making provision for the draft that had become, or was soon to become due. The moneys, thus raised and remitted by the defendant, were entered on the credit side of his general account in the plaintiffs' ledger, he being charged on the debtor side with all the acceptances and notes of both sets, as bills payable on the respective dates, when they were issued to him by the plaintiffs.

" The plaintiffs, prior to the commencement of their action, had sold a small quantity of the wool consigned to them, on a credit which had not expired on the 1st of October 1844. Since the 1st of said October, the plaintiffs have received, from sales of wool made by them, the sum of $15,177·64, over and above the charges of sale, which are credited in the ledger account of the plaintiffs hereinbefore mentioned ; of which sales the plaintiffs rendered to the defendant three several accounts.

" It also appears, that the sales of wool have not been completed, and that, when completed, a balance will remain due to the plaintiffs of a sum larger than the amount sought to be recovered in this suit.

" The plaintiffs brought the present action to recover the balance of their actual cash advances, which they alleged to be due on the 1st day of October 1844, and which they state at the sum of $2521·26 ; and in balancing their ledger, they distinguished between these items and the residue of the defendant's liability on the account as charged.

" The defendant contends that the sales, as above realized by the plaintiffs, have extinguished the plaintiffs' entire claim ,

and if not thus applicable, that the balance due the plaintiffs, at the commencement of their suit, is only $833·63 ; upon which, after hearing the parties, I report, that the balance of account claimed in the plaintiffs' writ was due and payable to them from the defendant on the day of the date of the said writ, being two thousand five hundred and twenty one $\frac{26}{100}$ dollars."

The auditor annexed to his report the correspondence of the parties, and copies of the plaintiffs' ledger account referred to in the report, and of an account rendered by them to the defendant on the 9th of October 1844. From this correspondence it appeared that the plaintiffs, soon after they received the wool, and had made some sales thereof, were satisfied that they should not be reimbursed, and therefore requested the defendant to give them additional security, and commenced this action to recover their cash advances, on the defendant's failing to give such security.

The accounts annexed to the auditor's report, and the further facts shown by the correspondence, sufficiently appear in the arguments of the counsel and the opinion of the court.

The parties agreed that the report of the auditor should be taken as a statement of facts, and that if the court, upon those facts and the documents annexed to the report, should be of opinion that the plaintiffs were entitled to recover the sum stated in the account annexed to their writ, or any part thereof, judgment should be rendered for them ; otherwise, that they should become nonsuit.

*Goodrich,* for the defendant. The plaintiffs agreed, when their advances were made, to give the defendant credit until the wool should be sold. The auditor reports that " the defendant applied " to the plaintiffs " to make him sundry advances, in cash and in their acceptances, *to enable him to purchase* sheep-skins, upon an agreement that he would pull the wool and consign the same to the plaintiffs, *as security for such advances,* and for sale upon a guaranty commission." From this it appears that the defendant had no means of making purchases, and that the plaintiffs relied, for their

reimbursement, upon the property purchased, enhanced in value by the defendant's skill and labor. Why should an advance of cash be made to enable the defendant to purchase goods, if it was to be returned instantly ?

The amount due to the plaintiffs, when their action was commenced, has been paid by the proceeds of sales realized by them prior to a hearing before the auditor. When goods are consigned, upon which advances are made at the time of consignment for sale, the law, in the absence of any contrary provision by the parties, implies an agreement that the proceeds of the sales, when realized, shall be appropriated to the extinguishment of the advances which remain unpaid, in the order in which the debts stand in the account. *Clayton's case*, 1 Meriv. 605, 608. *Gass* v. *Stinson*, 3 Sumner, 112.

It is true that this court held, in *Beckwith* v. *Sibley*, 11 Pick. 482, that a factor might maintain an action to recover advances, in the absence of any agreement of the parties, although the property on which the advances were made had not been sold. Admitting the law to be so, it must be with this qualification, viz. if the plaintiff voluntarily receive, after action brought, and before trial, the amount due, the defendant may plead such payment in bar of the further maintenance of the action. See *Hunt* v. *Nevers*, 15 Pick. 500. *Randall* v. *Rich*, 11 Mass. 494. *Baylies* v. *Fettyplace*, 7 Mass. 325. *Kimball* v. *Wilson*, 3 N. Hamp. 96.

But if the proceeds of sales are not applicable to the balance due to the plaintiffs on the day of the commencement of their action, the plaintiffs are entitled to recover only $833·63, and interest ; that being the amount due on that day, upon a proper statement of the plaintiffs' account. The plaintiffs' ledger account credits the defendant with $4872, received July 18th 1844 ; $4893·74, received July 22d; $2965·25, received August 31st ; and $2953·50, received September 3d. These sums, with interest to October 1st, amount to $15,825·13, and leave a balance of only $833·63.

*G. T. Curtis*, for the plaintiffs. Nothing in the case shows that the plaintiffs agreed to look solely to the wool to

reimburse their advances. In the absence of such an agreement, the law presumes that the advances were made upon the joint credit of the wool, as collateral security, and of the responsibility of the consignor. *Beckwith* v. *Sibley*, 11 Pick. 482.

Before any wool had reached the plaintiffs, their liabilities on the consignment, which the defendant had agreed to make, were over $22,000. But the wool had been purchased by the defendant, and he was preparing it to be forwarded to the plaintiffs. So late, however, as the 26th of August, only one bag had been sent to their store. Prior to this date, besides the cash advances which are sued for, two of the plaintiffs' acceptances, amounting to $10,000, had become due; a third, for $4000, would become due September 9th, and a fourth, for $3000, on the 9th of October. When the first two drafts became due, viz. July 8th and August 9th, the plaintiffs had received no wool from the defendant, and he was unable to take them up. He therefore applied to the plaintiffs for new paper, the proceeds of which he transmitted to them, to take up their old acceptances. The first invoice of wool was sent to the plaintiffs on the 11th of September, and the second on the 13th. After all the wool had been in their hands fifteen days, they wrote to the defendant, (September 28th,) and stated to him that the sales of the wool would not cover their advances; that the quantity had fallen short of what their advances were predicated upon; and that there would be a deficit for which the defendant must give them security. Not receiving any reply from the defendant, they brought this action to recover the several sums which they had actually paid for and advanced to the defendant in cash, distinguishing those items, as the auditor states, from the defendant's liability on the outstanding paper, &c. This action was rightly brought; the claim sued is not extinguished; and the plaintiffs have a right to satisfy this part of their debt out of his property which they have attached.

After the letter of September 28th, the plaintiffs had a right to apply any credits that might come into their hands,

in whatever way would work out their best remedy and security. At the date of that letter, it was ascertained that there would be a large deficit. The auditor's report finds that the sales of the wool will still leave due to the plaintiffs a sum larger than what is sought to be recovered in the present action. On the 14th of April 1845, the plaintiffs' advances and liabilities, beyond the sum sued for, were $17,663·56, and the whole sales had amounted to $15,177·69 ; leaving a deficit, over what is sued for, of $2485·92. It was capable of being ascertained, on the 28th of September 1844, that the plaintiffs' advances and liabilities exceeded the whole value of the wool ; and the plaintiffs' letter of that date gave the defendant actual notice of the deficit ; and this was equivalent to notice that they would apply all the resources in their hands, as they should find for their best security against the impending result. And the defendant never directed any appropriation of the proceeds of the sales, either oefore or after he received that letter. The law, therefore, authorized the plaintiffs to sue immediately for so much money as they had paid, and to hold the wool to meet the residue of the defendant's liability. Story on Agency, $ 385. *Burrill* v. *Phillips,* 1 Gallis. 360. *Beckwith* v. *Sibley,* 11 Pick. 482. A factor who has a lien on goods or their proceeds, to the extent of more than their value, has a right to treat them as if they were his own, subject to this single qualification, viz. that he must apply the proceeds to *some part* of the debtor's liability. Story on Agency, $ 408. *Hudson* v. *Granger,* 5 Barn. & Ald. 27. *Taylor* v. *Kymer,* 3 Barn. & Adolph. 320. *Kirby* v. *Duke of Marlborough,* 2 M. & S. 18. *Corlies* v. *Cumming,* 6 Cow. 181.

The proceeds of the wool, on the facts of this case, are not payments, within the rule of the general appropriation of payments ; and the plaintiffs have exercised their right, and confined the proceeds to the other and subsequent advances. They stated their account and posted their books, so as to show the position in which they intended to place the proceeds of the sales ; and they brought their action October 1st

before any sales had been made, for the money which they had paid. The first sale was made on the 9th of October, but did not become due until March. On the same day they transmitted to the defendant an account, showing the extent of their lien over his whole merchandize, exclusive of what they had already paid. They had also previously written the letter of September 28th, and the defendant had done nothing to secure them.

For the purpose of remedy, justice and collection, the plaintiffs had a right to treat the different parts of their account as separate demands, and not as a running account. Indeed, the demands sued are of an entirely different character from the debts or possibility of debts on which their lien was founded. See *Peters* v. *Anderson*, 5 Taunt. 596.

But if the proceeds of the wool are to be regarded as payments, the appropriation of which is to be regulated by the rules of law, yet these rules allow the plaintiffs to elect to which debt they will apply those proceeds. See 5 Taunt. *ubi sup*. *Wright* v. *Laing*, 3 Barn. & Cres. 165. *Mills* v. *Fowkes*, 5 Bing. N. R. 455. *Williams* v. *Griffith*, 5 Mees. & Welsb. 300. *Biggs* v. *Dwight*, 1 Man. & Ryl. 308. *Bosanquet* v. *Wray*, 6 Taunt. 597. *Simson* v. *Ingham*, 2 Barn. & Cres. 65. *Smith* v. *Loyd*, 11 Leigh, 512.

The balance of $833·63, which the defendant has stated, is obtained by an arbitrary mode of stating the account, by claiming credit for items of cash which were in the plaintiffs' hands for an entirely collateral purpose. It seems from the auditor's report, that the defendant, at Albany, drew four drafts (among others) on the plaintiffs, amounting to $17,000, which are charged on the ledger, under date of May 8th 1844. It was an implied contract of the defendant to take up these drafts at maturity, or to place the wool in the plaintiffs' hands within a reasonable time of their falling due. But the defendant did not provide for these drafts in any way; and the first three became due before he forwarded the wool. The plaintiffs therefore made and delivered other paper to the defendant " to make provision for the drafts that

had become due, or were about to become due," under an agreement that the defendant should get it discounted, and forward to them the proceeds for this purpose. The proceeds of the new paper, which stand on the credit side of the plaintiffs' ledger account, amount to $15,680·49 and interest. This sum is not to be appropriated to extinguish a balance of money paid, which was due to the plaintiffs on the 1st of October 1844. Such was not the original understanding of the parties ; and the plaintiffs, without any express understanding, had a right, from the very nature of the transactions, to apply those sums towards payment of their first drafts.

HUBBARD, J.  The facts, as they are stated, do not furnish evidence that the plaintiffs agreed to give the defendant credit until the property consigned to them was sold. The plaintiffs stand like other commission merchants. They have no right, in the absence of directions, immediately to sell the goods consigned to them, if the interest of the consignor will be sacrificed by such sale. The receiving of the goods, under an agreement like the present, carries with it, also, the obligation to give a reasonable credit ; and to force the goods into market as soon as received, without regard to the interest of the owner, and merely to turn them into money as early as practicable, would be such a breach of duty as to expose them to a claim for damages, if the goods were sacrificed by the sale. On the other hand, they are required to wait only a reasonable time, and then, if the goods are not sold, they may call for payment or further security, and may sue for the amount due to them. This principle is well established as a part of the law merchant, and (without citing other authorities) is expressly recognized in the case of *Beckwith* v. *Sibley*, 11 Pick. 482.

On an examination of the accounts, we are satisfied that the sum sued for was due at the time the action was brought. It is true that by applying the payments, as received, to the discharge of the items of account first in order of date, the sum due would not exceed the amount stated by the counsel

for the defendant, to wit, $833·63. But we think, from the statement in the report, and also from the correspondence of the parties, that the sum of $2953·50, received by the plaintiffs on the 3d of September 1844, was to be specially applied to the payment of the acceptance of May 6th, for $3000, in five months, and falling due October 9th ; and though the money was received more than thirty days in advance, yet it was raised upon the credit of the plaintiffs, for the very purpose of meeting the prior acceptance, and they had a right so to apply it. The plaintiffs, then, had a good cause of action at the date of their writ ; and as nothing had been realized from the sale of the goods, they were not guilty of a breach of duty towards the defendant, in commencing their action in order to obtain further security.

But it is contended that the plaintiffs have been paid since the commencement of the suit, on the ground that they are bound to apply the proceeds of the sales, received by them, to the extinguishment of the first advances, in the order of time in which they were made. If this principle of appropriation were applicable to the case, the conclusion of the defendant would be correct ; and though he might be indebted to the plaintiffs, it would not be on the present cause of action. But we think that the rule applies to running accounts, where such payment must be presumed to have been made without other reference than to the simple discharge of the account, as far as the items of payment will go, and that the rule does not apply where the party having the right to make an appropriation of a payment does actually make it ; or, in the absence of such appropriation, when the law, looking at the relations of the parties and the nature of the account or transactions between them, finds another application required in order to do justice between them. *Peters* v. *Anderson,* 5 Taunt. 596. *Wright* v. *Laing,* 3 Barn. & Cres. 165, and other cases.

In the present case, the plaintiffs had paid for the defendant $16,000, after suit brought, before they had received any thing from the proceeds of the goods, except about $250 ; and we think they might well apply the proceeds of the

goods, as they were received, towards the discharge of the moneys paid by them prior to such receipts. It was an appropriation which certainly they had a right to make, in the absence of any direction from the defendant, if he had any right to control it ; and the bringing of the suit by the plaintiffs was evidence of such intended appropriation, coupled with the manner of separating and stating the accounts which they rendered him, and to which he made no objection. The property, by their attachment, had added to their security ; and it is one of the rights of a creditor, having several demands, to apply the payments to the debt not secured by property or by sureties, where other rules do not interfere or prohibit it.

But there is one sum of $250, received by the plaintiffs before any such payments were made, which must be applied in discharge of the sum due when the suit was brought ; as they then had no other claim against the defendant upon which a suit could be maintained, and as he might afterwards himself furnish means to pay the plaintiffs. *Hunt* v. *Nevers*, 15 Pick. 500.

The selling under a *del credere* commission, while it secures the amount of the sales to the principal, does not in law require the factor to anticipate the credit ; and the principal is only entitled to have the amount passed to his credit when the sale is matured. In this case, only one sale was matured prior to the payment of the $16,000. This amount must therefore be credited to the defendant. For the balance, casting the proper interest on the account, the plaintiffs are entitled to judgment.*

---

* See *Smart* v. *Sandars*, 3 Man. Grang. & Scott, 380.